UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JAMIE A.,

          Plaintiff,

   v.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

Case No. C23-81-MLP

ORDER

## I. INTRODUCTION

Plaintiff seeks review of the denial of her application for Child Disability Benefits ("CDB"). Plaintiff contends the administrative law judge ("ALJ") erred in discounting her testimony and lay testimony, and in failing to ensure that the medical expert's testimony was rendered in reliance on the correct understanding of the disability rules. (Dkt. # 9 at 1.) As discussed below, the Court REVERSES the Commissioner's decision and REMANDS the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## II. BACKGROUND

Plaintiff was born in 1986, has a 12th-grade education, and has never worked. AR at 443-44. In July 2018, Plaintiff applied for benefits, alleging she became disabled before she turned 22, which is an eligibility requirement for CDB. *Id.* at 15, 410-16. Plaintiff's application

ORDER - 1

1  was denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* at 107-11, 115-21. After two ALJs conducted hearings in 2019, 2021, and 2022 (*id*. at 30-97), an ALJ issued a decision finding Plaintiff not disabled because she had not shown that she had any severe impairments during the period at issue. *Id.* at 15-23.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-6. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 4.)

### III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v.*

ORDER - 2

*Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV. DISCUSSION

### A. The ALJ Erred in Discounting Plaintiff's Testimony and the Lay Statements

In finding that Plaintiff's medically determinable impairments were not severe during the period at issue, the ALJ summarized Plaintiff's allegations and explained that he found them to be inconsistent with the record for a number of reasons. AR at 18-20. First, the ALJ noted that the record contains "very limited evidence of [Plaintiff's] mental impairments and functioning during the period at issue, and the majority of the evidence comes from after [she] attained age 22." *Id*. at 19. The ALJ went on to explain that the scant medical evidence that does date to the period at issue does not mention some of the notable conditions/symptoms that Plaintiff alleged, specifically selective mutism. *Id*. Moreover, one of the treatment notes dating to the period at issue references Plaintiff's normal "speech/memory," and a letter from Plaintiff's physician written during the period to excuse her from jury service mentions anxiety symptoms without specific reference to selective mutism, which the ALJ found inconsistent with her allegation that she suffered from selective mutism during the period at issue. *Id*.

Next, the ALJ found that Plaintiff's failure to seek specialized mental health treatment during the period at issue undermined her allegations of disabling mental impairments during this time. AR at 19. Lastly, the ALJ found that Plaintiff's social activities during the period at issue (namely starting and continuing a long-distance relationship with her boyfriend) was inconsistent with her allegations, and the ALJ also noted that Plaintiff reported that she became reclusive at age 24, which undermines her allegation that she did not leave her home during the adjudicated period (from her 18th birthday until she turned 21). *Id*. at 19-20.

ORDER - 3

Plaintiff concedes that "there is limited evidence during the relevant time period," but asserts that there is sufficient evidence relating to the period at issue that is sufficient to establish the existence of a severe impairment. (Dkt. # 9 at 4.) Specifically, Plaintiff points to treatment notes from the period referencing an anxiety diagnosis and treatment for that condition, as well as confirmation that she received special education in middle school and high school. *See* AR at 501, 509, 545, 551. The ALJ did not deny the existence of Plaintiff's medically determinable impairments during the period, however, but noted that the evidence dating to the period fails to mention the disabling limitations that Plaintiff alleges, most notably selective mutism. *See id*. at 19 (referencing *id*. at 535-86).

Plaintiff argues (dkt. # 9 at 5) and the Court agrees that this line of the ALJ's reasoning amounts to an improper focus on objective evidence, when the Ninth Circuit has held that the lack of objective corroboration cannot solely support an ALJ's discounting of a claimant's testimony. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ himself listed Plaintiff's selective mutism as a medically determinable impairment (AR at 17) and although the ALJ found that some parts of the limited evidence dating to the period at issue "seems at least somewhat inconsistent" with Plaintiff's allegations, the ALJ did not identify any evidence that is directly inconsistent with her allegations, and instead reasoned that an absence of corroboration amounts to an inconsistency. *See id*. at 19. But the Ninth Circuit has explained that a lack of corroboration and inconsistency are distinct concepts: a lack of objective corroboration is insufficient to support an ALJ's discounting of a claimant's testimony because "an ALJ cannot insist on clear medical evidence to support each part of a claimant's subjective pain testimony when there is no objective testimony evincing otherwise." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022). But where an ALJ finds that the objective medical record contradicts a

ORDER - 4

claimant's testimony, then an ALJ is not required to "allow[] a claimant's subjective evidence to effectively trump all other evidence in a case." *Smartt*, 53 F.4th at 499. Here, although the ALJ stated that the objective record was inconsistent to some degree with Plaintiff's allegations, the only "inconsistencies" referenced were notes that fail to mention the specific symptoms Plaintiff alleges and an ambiguous reference to normal "speech/memory," which may not even pertain to Plaintiff's allegations if it was intended to address memory. AR at 19. A lack of corroboration is not converted into an inconsistency by calling it an inconsistency, and the Court finds that the ALJ's failure to identify objective evidence directly inconsistent with Plaintiff's allegations reveals that the ALJ's finding is one of lack of corroboration rather than inconsistency.

As noted above, a finding of a lack of objective corroboration is insufficient to alone support the ALJ's assessment of Plaintiff's testimony, and this insufficiency is fatal because the ALJ's other lines of reasoning are also defective. The Court agrees with Plaintiff that the ALJ erred in suggesting that Plaintiff's failure to seek of "specialized mental health treatment" during the period at issue undermines her allegations of disabling limitations (AR at 19), given that Plaintiff did seek treatment with her primary care providers and because Plaintiff's parents exerted at least some degree of control over Plaintiff's access to medical care during the period at issue. Under these circumstances, it is not clear that the treatment Plaintiff received suggests that her symptoms were less limiting than alleged.

The Court also agrees with Plaintiff that the ALJ failed to cite activities that are inconsistent with her allegations. Plaintiff did begin a long-distance relationship with her boyfriend during the period at issue, but as the ALJ himself even noted, Plaintiff communicated with her boyfriend via a messaging application during the period at issue. *See* AR at 19. The ALJ found Plaintiff's ability to meet and communicate with a boyfriend online during the period at

ORDER - 5

issue to be "somewhat inconsistent" with her allegation of disabling symptoms during that time, but failed to clearly explain why that activity was inconsistent with her allegations. *Id*.

The ALJ also cited a treatment note indicating that Plaintiff became "reclusive to home" after her mother's leg was amputated when Plaintiff was 24, which is after the period at issue. *See* AR at 452, 601. That Plaintiff later reported that she became reclusive after the period at issue suggests that her symptoms may have worsened at that time, but this report does not establish that her activities during the period at issue were inconsistent with her allegations. Likewise, to the extent that the ALJ found that Plaintiff's more recent treatment notes suggested improvement after the adjudicated period (*id*. at 19), it is not clear why such improvement in 2017 or later would indicate that Plaintiff was less limited than alleged between 2004 and 2008.

Thus, because the ALJ's finding that Plaintiff's allegations were not corroborated by objective evidence is insufficient to support the ALJ's assessment of Plaintiff's testimony, the Court finds harmful legal error in this part of the ALJ's decision. This error also infects the ALJ's assessment of the lay evidence (AR at 452-59, 494-500, 507). Because the ALJ found the lay statements to be similar to Plaintiff's allegations, and unreliable for the same reasons (*id*. at 20), the ALJ must reconsider both Plaintiff's allegations and the lay evidence on remand.

### B. Plaintiff Has Not Identified Error in the Medical Expert's Scope of Testimony

John Nance, Ph.D., testified as a medical expert ("ME") at the 2021 hearing. *See* AR at 57-81. Dr. Nance testified that the dearth of objective evidence dating to the period at issue prevented him from concluding that Plaintiff's conditions met or equaled a listing during that time period. *Id*. at 63. He did believe, however, that he could provide an opinion as to Plaintiff's functioning during that time period, and testified that she had moderate limitations as to understanding, remembering, or applying information; concentrating, persisting, or maintaining

ORDER - 6

pace; and adapting or managing herself. *Id*. at 64. Dr. Nance testified that Plaintiff's limitations as to interacting with others were marked during the period at issue. *Id*.

When counsel questioned Dr. Nance as to why he believed Plaintiff's limitations were moderate in certain areas, rather than marked or extreme as the lay witnesses described, Dr. Nance answered:

> You know, the simple answer would be I think it is sort of in the construction of responsibilities, and that is my job is to report on objective medical information. And – and though the lay evidence is – it's sort of a guide, but unless I find some kind of proper authority sort of backing that up or making statements that corroborate that, then I'm left in a position of having to speculate. And as I say, I'm not allowed to speculate. I'm only allowed to draw conclusions based on reasonable objective information, as I understand the nature of the law.

AR at 65.

Later in the hearing, counsel asked Dr. Nance whether he believed Plaintiff could sustain a conversation during the period at issue, and Dr. Nance indicated that answering this question would require "a little bit of speculation, but I would – I would guess that she would not have been able to do that." AR at 67. Counsel asked Dr. Nance to confirm whether it is his "understanding that you can only base your opinion with respect to what [Plaintiff's] functional limitations are solely on objective medical evidence?" *Id*. at 69. Dr. Nance answered:

> No. No. I – I think if I have a basis of objective medical information, then I can't offer – I – I can sort of – let's see – what would be the right mental process? I can put two and two together and come up with four. And that's what I did. I thought that's what I was doing. I was corroborating the fact that this is a longstanding disorder, that it is in fact something that's – that's probably very organic. It's not the result of a specific trauma of any kind. I mean we have all of that information that I – I can draw reasonable inference from. But I understand that the [Commissioner's Program Operations Manual System] forbids me from just flying off into the wild blue yonder and making diagnosis without some objective medical information supporting my opinion.

*Id*. at 69-70.

ORDER - 7

Plaintiff contends that the ALJ erred in failing to instruct Dr. Nance that he should base his opinion on all the evidence in the record, rather than only the objective medical evidence. (Dkt. # 9 at 10-12.) Plaintiff cites no authority indicating that Dr. Nance misunderstood the proper scope of his opinion, however. Regulations and case law indicates that an ALJ may discount a medical opinion that is not supported by objective evidence. *See* 20 C.F.R. §§ 404.1520c, 416.920c. That an ALJ should look to the entire record (including subjective self-reporting and lay evidence) when assessing a claimant's residual functional capacity does not suggest that a medical expert should do the same when providing an opinion. *See* 20 C.F.R. §§ 404.1545, 416.945.

To the extent that Plaintiff also suggests that Dr. Nance should have been instructed that he could consider Plaintiff's treatment notes from years after the period at issue (dkt. # 13 at 9), the record confirms that Dr. Nance did consider and rely upon that evidence in rendering his opinion. As the ALJ stated, Dr. Nance testified that his opinion was informed by the later treatment notes. *See* AR at 22 (citing *id*. at 77-81). The ALJ ultimately found that Dr. Nance's reliance on those later treatment notes in describing how Plaintiff functioned during the period at issue undermined his testimony because the later treatment notes themselves were not corroborated by and were inconsistent with evidence dating to the period at issue. *See id*. Thus, Plaintiff has not shown that Dr. Nance either was or perceived that he was precluded from considering Plaintiff's later treatment notes in rendering his opinion.

Because Plaintiff has not shown that Dr. Nance's testimony was erroneously limited, Plaintiff has failed to show that a remand is necessary to allow further development of the record in this regard.

ORDER - 8

## V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED**, and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ shall reconsider Plaintiff's testimony, the lay evidence, and any other parts of the decision as necessary.

Dated this 6th day of June, 2023.

MICHELLE L. PETERSON
United States Magistrate Judge